UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- X
SECURITIES AND EXCHANGE         :
COMMISSION,                     :     **MEMORANDUM DECISION AND**
                                :     **ORDER**
                    Plaintiff,  :
                                :     22-cv-1406 (BMC)
        - against -             :
                                :
FRANCIS BILLER, RAYMOND DOVE,   :
CHESTER ALVAREZ, TROY GRAN-     :
BROOKS, AND JUSTIN PLAIZIER,    :
                                :
                    Defendants, :
                                :
            and                 :
                                :
LIA PATRICIA SEPULVEDA SALAZAR, :
EDWARD LOPEZ GIRALDO, EDWARD    :
CLARKE, AND SHREDDERZ           :
INTERNATIONAL CORP.,            :
                                :
            Relief Defendants.  :
-------------------------------------------------------- X

**COGAN**, District Judge.

Invoking Federal Rule of Civil Procedure 54(b), plaintiff Securities and Exchange

Commission seeks entry of a default judgment against some but not all the defendants in this

action.  The motion does not meet the standard for the special remedy of Rule 54(b).

Accordingly, it is denied.

## BACKGROUND

I.      **Summary of Complaint**

The SEC's complaint alleges that between 2016 and 2018, defendants ran a boiler room

out of Medellin, Columbia to defraud U.S. purchasers into buying penny stocks.  Defendants

were hired by groups of people secretly controlling at least eighteen foreign issuers.  As is

typical in a pump-and-dump scheme, by hard-selling the issuers' stock based on false representations, defendants created a phony market that enabled the control group to sell their own stock at an artificially high price. Then, when the control group sold its shares and sales efforts ceased, the U.S. investors were stuck with stock that had little or no value. There were all kinds of misrepresentations by defendants and the control groups that are set forth in detail, but the specifics are not important to this decision. The complaint seeks permanent injunctive relief, disgorgement, prejudgment interest, and civil penalties under federal securities law.

As is also typical, the complaint breaks defendants into two groups – the primary defendants and the relief defendants. The latter are not accused of participating in the boiler room operation, but the SEC seeks disgorgement of the proceeds of the fraud that they received from the primary defendants.

Of the primary defendants, defendants Francis Biller and Raymond Dove were the ringleaders. They set up the boiler room in Medellin and recruited salesmen to push the stock of issuers that Biller and Dove had enlisted or created. Defendant Chester Alvarez sold stock to investors. In addition, when Biller and Dove would find or create an issuer, Alvarez would at the outset buy small quantities of the issuer's stock so that he or other salesmen could show potential investors phony activity and price increases in the stock.

Sales proceeds would be paid directly to the issuer or its control group, which would then kick back 65% of those proceeds to the criminal operation. Those proceeds were then distributed to Dove, Alvarez, and the two other primary defendants, Troy Gran-Brooks and Justin Plaizier. Gran-Brooks and Plaizier were boiler room salesmen who each participated in at least one of the schemes of fraudulent touting, and the complaint alleges that they received $469,968 and

$112,254, respectively.  Dove received about $1.8 million, and Alvarez received $89,484.  The complaint does not allege how much Biller received.

The relief defendants consist of Lia Patricia Sepulveda Salazar, who is Biller's wife and received $3 million; Edward Lopez Giraldo, who is related to Salazar and received $2 million; Edward Thomas Clark, who is related to Biller or Salazar and received at least $630,000; and Shredderz International Corp., a company incorporated by Dove and of which he is the sole officer and director.  Shredderz received $1.645 million.

The complaint contains four claims for relief.  The first and second claims are for securities fraud under Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), respectively, against all five primary defendants.  The third claim for relief is against Alvarez for manipulation of securities prices under Section 9(a)(2) of the Exchange Act, 15 U.S.C. § 78i(a)(2).  The fourth claim for relief is against the relief defendants for unjust enrichment, an equitable remedy allowed under Section 21(d)(5) of the Exchange Act, 15 U.S.C. § 78u(d)(5).

## II.      Procedural Posture

The docket reflects that the Clerk has entered a default against Dove, Shredderz, and Clarke under Fed. R. Civ. P. 55(a).  The SEC has not effected service on any of the other defendants.  Although all defendants are foreign individuals or entities and thus the SEC is not bound by Rule 4(m), it is not clear that service on the absent defendants will be achieved.

The SEC has filed two motions for default judgment.  The first is against Shredderz.  It seeks disgorgement of $1,645,570 plus prejudgment interest.  The second default judgment motion is against Dove and Clarke.  Although one motion, it proposes separate judgments

against each.  As against Dove, the motion seeks (1) to enjoin him from violating the securities laws; (2) to bar him from taking part in any penny stock operation; (3) disgorgement of $1,804,544.09 plus prejudgment interest; (4) a civil penalty in the amount of $3,729,294; and (5) a declaration that these obligations non-dischargeable in bankruptcy.  As to Clarke, the motion seeks disgorgement of $634,565 plus prejudgment interest and a declaration that the obligation is non-dischargeable in bankruptcy.

## DISCUSSION

The rule applicable in federal civil actions is that the court enters one final judgment at the conclusion of the case, even if there are multiple claims and defendants.  "Th[e] final-judgment rule, now codified in § 1291, preserves the proper balance between trial and appellate courts, minimizes the harassment and delay that would result from repeated interlocutory appeals, and promotes the efficient administration of justice."  Microsoft Corp. v. Baker, 137 S. Ct. 1702, 1712 (2017).

Federal Rule of Civil Procedure 54(b) is an exception to this long-standing principle.  It provides, in part, that "when an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of final judgment as to one or more, but fewer than all, claims or parties only if the court determines that there is no just reason for delay."  A partial judgment under Rule 54(b) should be granted only in the "interest of sound judicial administration," Curtiss–Wright Corp. v. General Electric Co., 446 U.S. 1, 8 (1980), or, in the "infrequent harsh case where there exists some danger of hardship or injustice through delay which would be alleviated by immediate appeal," Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002).  In general, a Rule 54(b) certification of the dismissal of fewer than all the claims in an action should not be granted "if the same or closely related issues remain

4

to be litigated." Nat'l Bank of Wash. v. Dolgov, 853 F.2d 57, 58 (2d Cir. 1988); see also Cullen v. Margiotta, 811 F.2d 698, 711 (2d Cir. 1987) ("In a case involving multiple claims, the court should not enter final judgment dismissing a given claim unless that claim is separable from the claims that survive."). That is equally true with respect to final judgment against some but not all parties. See id. at 710 ("In the multiple party situation . . . the court should not, as a general matter, direct the entry of a final judgment pursuant to Rule 54(b) if the same or closely related issues remain to be litigated against the undismissed defendants.").

I see no reason to invoke the special procedure of Rule 54(b) in this case. None of the other defendants have even been served. That means that any one of them could appear in court and contest the essential allegations of a boiler room operation that would form the basis for the default judgment against their defaulting co-defendants. Not only are the claims against Biller and the other defendants not severable – they are inextricably intertwined. Granting these default judgment motions thus could lead to a situation where – in the very same case – we have one set of facts established against the defaulting defendants, and a contrary set of facts established against the non-defaulting defendants.

It follows that I reject the SEC's claim that there is no risk of inconsistent judgments. The SEC does not address the question of why it brought this case against multiple defendants and why, more importantly, all the primary defendants are jointly named and undifferentiated in the two primary claims for relief. The SEC simply says that their liability is not joint, but severable. The *ad damnum* clause of the complaint is not consistent with that assertion. But even if I accept that the motions for a default judgment effectively narrow the complaint, that only goes to damages; it does not solve the problem that liability would have to be based almost entirely on the same underlying conduct among defaulting and non-defaulting defendants.

Two further points warrant note.  First, the primary purpose of Rule 54(b) in a multi-party case is to permit an immediate appeal where the liability of a party has been finally determined and will not be affected by the continuation of the case against the other defendants.  See Gelboim v. Bank of Am. Corp., 574 U.S. 405, 416 (2015).  That is certainly not the case here.  In fact, that concern has much more limited application in the default judgment context, where it is "unusual[] for defendants to skip the motion to vacate the default judgment and instead directly appeal the entry of default judgment."  See City of New York v. Mickalis Pawn Shop, 645 F.3d 114, 128 (2d Cir. 2011).  This is consistent with the Second Circuit's "strong preference" for resolving disputes on the merits and its admonition that because default judgments are "the most severe sanction which the court may apply," they are "generally disfavored" and "reserved for rare occasions."  Id. at 129.

Second, it's not as if the SEC cannot use more conventional procedures to obtain a final judgment against these three defendants.  It could simply voluntarily dismiss the unserved defendants under Rule 41(a)(1)(A) without prejudice and obtain a final judgment against the rest.  See Unitrans Colsolidated, Inc. v. Classic Closeouts, LLC, No. 09-cv-2098, 2010 WL 1265206, at *1 (E.D.N.Y. Mar. 31, 2010).  Alternatively, if it is concerned about asset dissipation (which it has not indicated), the panoply of prejudgment remedies under Rule 64(a) and Rule 65 can alleviate that concern to the same extent as would a final judgment.[1]

---

[1] Entering a partial default judgment against relief defendant Edward Clarke would be especially inappropriate given that (i) he is not accused of any wrongdoing; (ii) he is an elderly "family member of Biller or his wife" living in Canada, see ECF No. 35-1, -2; and (iii) Biller – the individual best suited to refute the allegations of wrongdoing underpinning the disgorgement claim against Clarke – has not even been served.

**CONCLUSION**

Both motions for default judgment are denied, without prejudice to renewal when the posture of the case changes.

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated: Brooklyn, New York
       February 6, 2023